UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MC MANAGEMENT OF ROCHESTER LLC.,
PANE VINO LLC.,
PHARAOHS GC INC.,
VENETO WESTSIDE LLC.,
MJM FITCH, INC.,
759 CANANDAIGUA, INC.,
GRAND CENTRAL WINE BAR, LLC.,
WILLIAM JAMES DEVELOPMENT CORP.,
RAPHAEL'S CORP.,
and
WMK MANAGEMENT, INC.,

**COMPLAINT**

Civil Action No.: **22-cv-610**

                    *Plaintiffs*,

v.

JOSEPH R. BIDEN, in his official capacity
as President of the United States,
NANCY PELOSI, in her official capacity
as the Speaker of the United States House of Representatives,
CHARLES SCHUMER, in his official capacity
as the United States Senate Majority Leader,
KEVIN MCCARTHY, in his official capacity
as Minority Leader of the United States House of Representatives,
MITCH MCCONNELL, in his official capacity as
Minority Leader of the United States Senate,
ISABEL CASILLAS GUZMAN, in her
official capacity as Administrator
of the United States Small
Business Administration, and
THE UNITED STATES SMALL BUSINESS
ADMINISTRATION,

                    *Defendants*.

_____

{H3370032.2}                                    1

Plaintiffs MC Management of Rochester, LLC, Pane Vino, LLC, Pharaohs GC Inc., Veneto Westside LLC, MJM Fitch, Inc., 759 Canandaigua, Inc., Grand Central Wine Bar, LLC, William James Development Corp., Raphael's Corp. and WMK Management, Inc., (collectively "Plaintiffs") by their attorneys, HoganWillig, PLLC, as and for their Complaint herein, allege as follows:

## NATURE OF THE CASE

1. "The Constitution created a government dedicated to equal justice under law." *Cooper v. Aaron,* 358 U.S. 1, 19 (1958). The government may not frustrate this principle of equality by making "distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objective." *Lehr v. Robertson,* 463 U.S. 248, 265 (1983). Whether it be discrimination based on race or gender, "unreasonable discrimination" by the government is never permitted. *Bolling v. Sharpe,* 347 U.S. 497, 499 (1954).

2. In March 2021, the Defendants undermined the constitutional principles of equality under the law by legislatively creating a discriminatory scheme and administering a governmental grant program in a way that gave preferential treatment based on race, gender and improper political influence.  Under Section 5003 of the American Rescue Plan Act ("ARPA"), Congress appropriated $28.6 billion to create the Restaurant Revitalization Fund (the "RRF" or "fund") to be

administered by the United States Small Business Administration ("SBA"). This fund was intended by Congress and President Biden ("President") to provide relief for restaurants impacted by the COVID-19 pandemic.

3.      Defendants Isabel Casillas Guzman ("Administrator") and the SBA administered the fund in an overtly discriminatory manner.

4.      For the first 21 days of the SBA's consideration of applications by restaurants for monies in the RRF, which started May 3, 2021, the SBA prioritized the awarding of grants to restaurants owned by certain minorities, women and those with political influence.

5.      Consistent with this discriminatory legislative mandate passed by Congress and signed into law by the President, the SBA adopted a "first come, first served" queue to process grant requests until the RRF money ran out, and then re-sorted applicants within the queue based on their race and gender and those with political influence, putting "nonpriority" restaurant owners behind certain minority or female applicants, regardless of when they filed an application.

6.      Given the limited RRF money available, this put "nonpriority" grant applicants at significant risk that, by the time their applications were considered and processed, the RRF money would be gone. Every day that went by increased this risk, as the SBA paid out grants to minority and female applicants and those with political influence, but did not consider requests from "nonpriority" applicants.

7.     In fact, due to the SBA's preferential treatment of grant applications based on race, gender, and those with political influence, which discriminated against "nonpriority" applicants pursuant to the legislation enacted by all legislative and executive Defendants, the RRF monies were depleted and exhausted before the "nonpriority" applications of Plaintiffs MC Management of Rochester, LLC ("MC Management"), Pane Vino, LLC ("Pane Vino"), Pharaohs GC, Inc. ("Pharaohs"), Veneto Westside, LLC ("Veneto Westside"), MJM Fitch, Inc. ("MJM Fitch"), 759 Canandaigua, Inc. ("759 Canandaigua"), William James Development Corp. ("William James Development") Raphael's Corp. ("Raphael's") and WMK Management, Inc. ("WMK") were even considered by the SBA, and before said applications could be granted and RRF monies disbursed, despite the undisputed eligibility of the aforesaid Plaintiffs for such grants.

8.     In addition to and compounding the violation of constitutional rights giving rise to this action is the gross underfunding and mismanagement of the RRF, as well as what may be outright fraud:

- The demand for RRF grants far exceeded the $28.6 billion appropriated for the program; of the 372,000 applications submitted seeking $76 billion in grants, only 105,000 grants were approved before the RRF ran out of money. *The New York Times*, October 28, 2021; *San Antonio Current*, May 20, 2022;

- Although Congress apparently intended that the RRF was to be used to assist restaurants struggling to stay open due to the COVID pandemic, in reality many of the businesses which needed RRF funds the most were simply left out. *The New York Times*, December 24, 2021;

- Although Senator Schumer stated that the $28.6 billion appropriated for the RRF was a "down payment" which would be replenished as needed, on May 12, 2022, the Senate voted down the Small Business COVID Relief Act of 2022 which would have replenished the RRF with an additional $40 billion. *The New York Times*, December 24, 2021; *San Antonio Current*, May 20, 2022;

- Approximately 90,000 restaurants have been forced to close their doors due to the COVID pandemic and, with further RRF appropriations rejected by Congress, more than half of the 177,000 restaurants unable to obtain any of the initial $28.6 billion before those funds were exhausted are expected to close. *The Washington Post*, June 21, 2022;

- Ironically, while applicants who appeared to meet the requirements to have their applications prioritized have had their applications rejected, sixty-seven (67) $10 million grants went to hotel management chains, wedding venues, airport concessions and a Disney World restaurant group. *The Boston Globe*, July 12, 2021; *Nation's Restaurant News*, July 12, 2021;

- In Lakeland, Florida, one woman received a $1,685,667 RRF grant for a purported catering business that did not exist and another Lakeland woman received $3.4 million for a nonexistent catering business. One fictional caterer used a hotel room as her office address and has vanished. *Sarasota Herald Tribune*, October 11, 2021.

9. By this civil action, the (nonpriority) Plaintiffs seek a declaration that the SBA's use of race, gender and political influence to prioritize applications for RRF monies and discriminate against "nonpriority" applicants such as the aforesaid Plaintiffs is unconstitutional and, to remedy that wrongdoing, the applications of the above-named (Nonpriority) Plaintiffs must be considered immediately without reference to race, gender and those with political influence and, if approved, must be immediately funded.

10. All of the Plaintiffs herein also seek a declaration that, as parties entitled to receive grants under the RRF program, Plaintiffs had a constitutionally protected property interest in the receipt of said funds and that the Plaintiffs' rights were violated by the Defendants' failure to ensure that the Plaintiffs were not deprived the funds based on the unconstitutional and discriminatory administration of the fund.

11. By this civil action, the Plaintiffs seek the further declaration that by enacting and approving legislation under which each of the Plaintiffs meet the statutory definition of an "Eligible Entity" and failing to ensure that sufficient funds were appropriated to ensure that all persons entitled to receive grants under the subject legislation received said public monies, that the President and the United States Congress violated the Plaintiffs' property interest in the receipt of said funds constitutionally protected by the Due Process Clause of the United States Constitution.

## PARTIES

12. Plaintiff MC Management is a corporation organized and existing under the laws of the State of New York and is the owner and operator of the Hyatt Regency Hotel located at 125 East Main Street, Rochester, New York, and the Strathallan Rochester Hotel & Spa located at 550 East Avenue, Rochester, New York.

{H3370032.2}                                              6

13.    Plaintiff Pane Vino is a corporation organized and existing under the laws of the State of New York and is the owner and operator of Pane Vino on the River located at 175 North Water Street, Rochester, New York, and Pane Vino on the Avenue located at 3400 Monroe Avenue, Rochester, New York.

14.    Plaintiff Pharaohs is a corporation organized and existing under the laws of the State of New York and is the owner and operator of Pharaoh's Gentlemen's Club located at 999 Aero Drive, Cheektowaga, New York.

15.    Plaintiff Veneto Westside is a corporation organized and existing under the laws of the State of New York and is the owner and operator of Veneto's Wood Fired Pizza & Pasta Westside located at 308 Buffalo Road, Rochester, New York.

16.    Plaintiff MJM Fitch is a corporation organized and existing under the laws of the State of New York and is the owner and operator of Murphy's Law Irish Pub located at 370 East Avenue, Rochester, New York.

17.    Plaintiff 759 Canandaigua is a corporation organized and existing under the laws of the State of New York and is the owner and operator of Murphy's Law Irish Pub located at 759 South Main Street, Canandaigua, New York.

18.    Plaintiff Grand Central Wine Bar, LLC ("Grand Central") is a corporation organized and existing under the laws of the State of Maine and is the owner and operator of Grand Central Wine Bar located at 7 Railroad Avenue, Suite 400, Gorham, Maine.

19. Plaintiff William James Development is a corporation organized and existing under the laws of the State of New York and is the owner and operator of Rodney's located at S 4179 Lakeshore Road, Hamburg, New York.

20. Plaintiff Raphael's is a corporation organized and existing under the laws of the State of New York and is the owner and operator of Raphael's Restaurant located at 4572 Clark Street, Hamburg, New York.

21. Plaintiff WMK is a corporation organized and existing under the laws of the State of New York located at 2192 Niagara Street, Buffalo, New York, and is the owner of restaurants and catering businesses located in Buffalo.

22. All Plaintiffs named herein are referred to collectively as "Plaintiffs."

23. Defendant Joseph R. Biden is President of the United States and is sued in his official capacity, and is referred to herein as "President" or "Executive."

24. Defendant Nancy Pelosi is the Speaker of the United States House of Representatives and is sued in her official capacity.

25. Defendant Charles Schumer is Senate Majority Leader of the United States Senate and is sued in his official capacity.

26. Defendant Kevin McCarthy is Minority Leader of the United States House of Representatives and is sued in his official capacity.

27. Defendant Mitch McConnell is Minority Leader of the United States Senate and is sued in his official capacity.

28. Defendants Pelosi, Schumer, McCarthy and McConnell are referred to herein collectively as "Legislative Defendants" or "Congressional Defendants."

29. Defendant Isabella Casillas Guzman ("Guzman" or "Administrator") is the Administrator of the SBA and, under section 5003 of the ARPA, is responsible for administering the RRF; she is sued in her official capacity.

30. Defendant SBA is an agency of the United States government and is responsible for administering, processing and awarding grants under the RRF.

## JURISDICTION

31. Jurisdiction is in the United States District Court pursuant to 28 U.S.C. § 1331 and the Constitution of the United States.

## VENUE

32. Venue for this action is proper in the Western District of New York pursuant to 28 U.S.C. § 1391(e)(1) being the judicial district in which a substantial part of the events giving rise to the claims herein occurred and being the judicial district in which a majority of Plaintiffs herein reside.

## STATEMENT OF FACTS

33. On March 11, 2021, the President of the United States signed the ARPA into law and through Section 5003 of the ARPA, Congress and Congressional Defendants appropriated $28.6 billion for the RRF to be administered by Defendant Guzman as Administrator of the SBA. The ARPA provides that the "Administrator shall use amounts in the Fund to make grants" to restaurants that require grant support due to "the uncertainty of current economic conditions."

34. Section 5003(c)(3) of ARPA provides a priority to certain applicants: "During the initial 21-day period in which the Administrator awards grants under this subsection, the Administrator shall prioritize awarding grants to eligible entities that are small business concerns owned and controlled by women, [veterans], or socially and economically disadvantaged small business concerns" (hereinafter "priority applicants"). To qualify as a "priority applicant", the small business concern must be a restaurant that is at least 51% owned and controlled by women, veterans or the "socially and economically disadvantaged."

35. The ARPA incorporates another federal law called the Small Business Act, which provides that "[s]ocially disadvantaged individuals are those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities." 15 U.S.C. § 637(a)(4)(A).

36.  SBA regulations further define "socially disadvantaged individuals" and "economically disadvantaged individuals" as individuals who belong to certain racial groups. 13 C.F.R. §§ 124.103, 104. To be included into one of those racial categories, individuals must be a member of one of the following groups: "Black Americans; Hispanic Americans; Native Americans (including Alaska Natives and Native Hawaiians); Asian Pacific Americans; or Subcontinent Asian Americans."

37.  Plaintiff MC Management applied for an RRF grant on May 3, 2021 and the anticipated RRF award was $7,034,823.00. Despite MC Management's entitlement to the monies applied for, no grant was awarded.

38.  Plaintiff Pane Vino applied for an RRF grant on May 17, 2021 and the anticipated RRF award was $636,588.00. Despite Pane Vino's entitlement to the monies applied for, no grant was awarded.

39.  Plaintiff Pharaohs applied for an RRF grant on May 18, 2021 and the anticipated RRF award was $2,025,418.00. Despite Pharaohs entitlement to the monies applied for, no grant was awarded.

40.  Plaintiff Veneto Westside applied for an RRF grant on May 4, 2021 and the anticipated RRF award was $142,166.40. Despite Veneto Westside's entitlement to the monies applied for, no grant was awarded.

41.  Plaintiff MJM Fitch applied for an RRF grant on May 3, 2021 and the anticipated RRF award was $421,458.89. Despite MJM Mitch's entitlement to the monies applied for, no grant was awarded.

42.  Plaintiff 759 Canandaigua applied for an RRF grant on May 3, 2021 and the anticipated award was $547,406.29. Despite 759 Canandaigua's entitlement to the monies applied for, no grant was awarded.

43.  Plaintiff Grand Central applied for an RRF grant on May 3, 2021 and the anticipated RRF award was $455,981.30. Despite Grand Central's entitlement to the monies applied for, no grant was awarded.

44.  Plaintiff William James Development applied for an RRF grant while funds were available, and the anticipated award was $505,328.00. Despite William James Development's entitlement to the monies applied for, no grant was awarded.

45.  Plaintiff Raphael's applied for an RRF grant on May 19, 2021 and the anticipated award was $83,098.00. Despite Raphael's entitlement to the monies applied for, no grant was awarded.

46.  Plaintiff WMK applied for an RRF grant while funds were available, and the anticipated award was $2,853,127.32. Despite WMK's entitlement to the monies applied for, no grant was awarded.

47.  The Nonpriority Plaintiffs are not 51% owned and controlled by women or the minority groups described in the above-referenced SBA regulations and

provisions of the Small Business Act. As a result, those Plaintiffs did not qualify for priority consideration for RRF grants based on race or gender.

## FIRST CAUSE OF ACTION

### VIOLATION OF CONSTITUTIONAL RIGHTS – EQUAL PROTECTION CLAUSE

### AS AGAINST DEFENDANT SMALL BUSINESS ADMINISTRATION

### (DECLARATORY JUDGMENT)

48. Plaintiffs repeat and reallege paragraphs "1" through "47" as if fully set forth herein.

49. By giving priority consideration to women and minority groups in granting applications for RRF monies under Section 5003 of the ARPA, which the Congress intended to be disbursed on a "first come, first served" basis, the Congressional and Executive and all Defendants have injected explicit racial and gender-based preferences into the priority process.

50. Purporting to rely on legal authority which predates the pandemic, the SBA presumes certain applicants are socially disadvantaged based solely on their race or gender, and those applicants were allowed by the SBA to jump to the head of the line for RRF money through such preferential treatment, all to the detriment of "nonpriority" applicants such as the Nonpriority Plaintiffs herein.

51.    Since it obviously classifies people by race and gender – all to the detriment of the Nonpriority Plaintiffs named herein who did not receive preferential treatment – the SBA's policy of giving grants to priority applicants under Section 5003 of ARPA is presumptively invalid. See, *Vitolo v. Guzman*, 999 F.3d 353, 360, 364 (6th Cir. 2021).

52.    No compelling government interest nor any other justification exists for intentionally discriminating against the above-named Plaintiffs as "nonpriority" applicants and assuming that said Plaintiffs are less deserving of RRF monies.

53.    The Defendants' use of above-described race-based and gender-based preferences of the RRF violated the Equal Protection Clause of the United States Constitution.

54.    Therefore, (Nonpriority) Plaintiffs are entitled to a declaratory judgment and finding of fact that the SBA's race-based and gender-based preferences in considering RRF applications violated said Plaintiffs' constitutional rights and that Plaintiffs' RRF applications must be considered as of the dates they were received by the SBA, without reference to the aforesaid unconstitutional preferences.

55.    The express language of Section 5003(b)(2)(A) of the ARPA specifically provides that the $28.6 billion specifically appropriated for the RRF is

"[i]n addition to amounts otherwise available." Accordingly, the source of funds for the RRF is not limited to the aforesaid $28.6 billion.

56.     Plaintiffs are entitled to and seek the further declaration that, if the RRF applications of those Plaintiffs are determined to be acceptable as of the dates they were received, the applications must be granted and funded by Defendants.

## SECOND CAUSE OF ACTION

## VIOLATION OF CONSTITUTIONAL
## RIGHTS – DUE PROCESS CLAUSE

## AS AGAINST DEFENDANT SMALL BUSINESS ADMINISTRATION

## (DECLARATORY JUDGMENT)

57.     Plaintiffs repeat and reallege paragraphs "1" through "56" as if fully set forth herein.

58.     Each of the Plaintiffs herein meet the definition of an "Eligible Entity" under Section 5003(a)(4) of ARPA and, therefore, each of the Plaintiffs was entitled to apply for and receive RRF monies.

59.     Since each of the Plaintiffs were entitled to receive the funds applied for under the RRF program and there was either a certainty or very strong likelihood that the Plaintiffs' applications would be granted on the merits, each of the Plaintiffs possessed a property interest in the receipt of the RRF monies which was protected

by the Due Process Clause of the United States Constitution. See, *Kapps v. Wing*, 404 F.3d 105, 115 (2d Cir. 2005).

60.     Furthermore, since funds were appropriated for the RRF and were available to be distributed to eligible entities such as the Plaintiffs when the Plaintiffs submitted their RRF applications, the Plaintiffs' constitutionally protected property interest in the receipt of said funds attached upon the submission of the Plaintiffs' applications despite funding limitations of the RRF program or the subsequent exhaustion of the funds appropriated and administered by all Defendants. *Id.* at 117-118; see also, *Alexander v. Polk*, 750 F. 3d 250, 260 (3rd Cir. 1984).

61.     Under Section 5003(c)(3)(A) of the ARPA, as Administrator of the SBA and in accordance with the Plaintiffs' above-described constitutionally protected property interest in RRF grant monies, Defendant Guzman was expressly obligated to ensure that eligible entities such as the Plaintiffs would have access to RRF grant funding despite the priority consideration given to certain applicants in the initial 21-day period described above.

62.     Defendant Guzman did not have the authority to withhold appropriated funds from the Plaintiffs due to the Plaintiffs' protected property interest in receiving said funds and should have managed the RRF in such a manner so as to protect the Plaintiffs' property interest in the available funds.

63.     Furthermore, as stated above, under Section 5003(b)(2)(A) of the ARPA, the amount originally appropriated for the RRF is "[i]n addition to amounts otherwise available" and, since the source of funds for the RRF is not limited to the amount originally appropriated and the Plaintiffs' constitutionally protected property interest attached before the amount originally appropriated was exhausted, Defendant Guzman was obligated to cause the SBA to use such budgetary sources as were necessary to fund the RRF grants to which the Plaintiffs were entitled.

64.     In addition, the SBA has no procedures in place to safeguard the Plaintiffs' constitutionally protected interest in RRF grant monies or enable the Plaintiffs to challenge funding decisions of Defendants Guzman and SBA which adversely affected the Plaintiffs' property interest in the receipt of RRF grant funds.

65.     As such, Plaintiffs are entitled to a declaratory judgment and finding of fact that Defendant SBA violated Plaintiffs' property rights in RRF grant funds protected by the Due Process Clause of the Constitution by (a) failing to ensure the Plaintiffs would have access to RRF grant funding when appropriated funds were available, (b) failing to obtain funding to provide the RRF grants to which the Plaintiffs were entitled after the funds originally appropriated were exhausted, and (c) making funding decisions on an unconstitutional basis which adversely effected Plaintiffs' protectable property interests without any procedures in place to enable Plaintiffs to challenge or dispute said decisions.

{H3370032.2}                                           17

66.     Plaintiffs seek, and are entitled to the further declaratory judgment that Plaintiffs are entitled to the RRF grants they applied for and that those grants must be funded by Defendants and paid to the Plaintiffs.

**THIRD CAUSE OF ACTION**

**DEMAND FOR DAMAGES FOR VIOLATION OF
CONSTITUTIONAL RIGHTS AS
AGAINST DEFENDANT ADMINISTRATOR**

67.     Plaintiffs repeat and reallege paragraphs "1" through "66" as if fully set forth herein.

68.     As the Administrator of the SBA, Defendant Guzman is constitutionally prohibited from injecting race-based, gender-based and political influenced preferences into the application process, and under Section 5003(c)(1) of the ARPA, as enacted by Congressional and Executive Defendants and houses of Congress, Defendant Guzman was expressly required to "award grants to eligible entities in the order in which applications are received by the Administrator."

69.     It was clearly the purpose of the foregoing provisions to provide desperately needed relief to businesses that were being shuttered and crippled due to governmental COVID restrictions and pandemic related business losses and to give eligible applicants, such as the Plaintiffs in this case, the opportunity to obtain grants from the RRF while funds were still available.

70.     By Defendant Guzman failing to "award grants to eligible entities in the order in which applications are received" because of the aforesaid race-based and gender-based preferences in violation of the Equal Protection Clause of the United States Constitution, the applications of the Plaintiffs for RRF grants were not considered while funds were still available.

71.     Moreover, acting as Administrator of the SBA, Defendant Guzman failed to manage the RRF to ensure the grants which all of the Plaintiffs herein applied for were funded despite the Plaintiffs' property interest in the receipt of said grants and thereby violated the rights of the Plaintiffs guaranteed by the Due Process Clause of the United States Constitution.

72.     Defendant Guzman's unconstitutional conduct damaged Plaintiffs by preventing Plaintiffs from receiving the RRF grants the Plaintiffs applied for and for which the Plaintiffs were eligible, and Defendant Guzman is liable for said damages in her capacity as Administrator of the SBA and the RRF. See, *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

*[Space Intentionally Left Blank]*

## FOURTH CAUSE OF ACTION

### VIOLATION OF CONSTITUTIONAL RIGHTS – DUE PROCESS CLAUSE

### AS AGAINST DEFENDANTS UNITED STATES PRESIDENT, THE UNITED STATES SENATE, MAJORITY AND MINORITY LEADERS AND THE SPEAKER AND MINORITY LEADER OF THE UNITED STATES HOUSE OF REPRESENTATIVES

### DECLARATORY JUDGMENT

73.     Plaintiffs repeat and reallege paragraphs "1" through "72" as if fully set forth herein.

74.     On February 24, 2021, the bill which resulted in the passage of ARPA was introduced in the House of Representatives for consideration (the "ARPA Bill"); on February 27, 2021, the ARPA Bill was passed in the House of Representatives; on March 6, 2021, the ARPA Bill was passed in the Senate; and on March 10, 2021, the ARPA Bill was presented to President Biden for signature.

75.     President Biden signed the ARPA Bill on March 11, 2021 and on that date, the ARPA Bill became Public Law No. 117-2.

76.     In February 2021, when the bill was under consideration by the House of Representatives, the Senate and the President's Office, it was known, or should have been known with minimal analysis, that the proposed funding was less than

one third of what would be necessary to provide eligible applicants with their entitlement.

77.  Thus, it was known even before the enactment of the ARPA that the vast majority of the recipients would be the related groups that the bill purposefully discriminated in favor of, or those with the necessary political connections to be moved to the head of the queue.

78.  This level of knowledge and behavior is more typically thought of as being what occurs in despotic and corrupt governments in other parts of the world, and not in a democratic republic like the United States because of its constitutional protections.

79.  Behavior of this nature results in the unnecessary development of cynicism among citizens and a belief that fair play is not part of the day to day operations of government. Such beliefs are anathema to a smoothly functioning democracy, to the principles upon which this country was founded and to the men and women who have given their lives in furtherance of these sacred tenets.

80.  As stated above, under Section 5003 of ARPA, Congress appropriated $28.6 billion to create the RRF "[i]n addition to amounts otherwise available" and each of the Plaintiffs herein meet the definition of an "Eligible Entity" under Section § 5003(a)(4) and under the law each Plaintiff was therefore entitled to apply for and receive RRF monies when the law was enacted.

81.     It is well known, and was discussed with concern among higher level officials of the SBA, that grants of the RRF were improperly distributed to individuals and entities that were friends, acquaintances, political contributors and donors of either SBA officials, members of Congress, or other politically connected individuals.

82.     Upon information and belief, funds were paid out to individuals and entities that: 1) were never a restaurant facility; 2) were a restaurant facility that was closed during the operative period of time during the Covid pandemic; or 3) were not in existence at the time of the operative period during the Covid pandemic, but were created after the fact solely for purposes of receiving these RRF grants.

83.     Furthermore, as stated above, upon the enactment of the ARPA, each of the Plaintiffs had a property interest in the receipt of RRF monies protected by the Due Process Clause of the Constitution. However, the monies appropriated to fund grants to which the Plaintiffs were entitled were depleted before grants could be awarded to the Plaintiffs.

84.     By their official conduct of enacting the ARPA without providing for sufficient appropriations to fund grants which the Plaintiffs were entitled to receive under Section 5003(a)(4) of ARPA, the President and the Congress violated the Plaintiffs' property rights in RRF grant funds protected by the Due Process Clause of the United States Constitution.

85.     When the funds appropriated for the RRF program were still available, applicants of wealth and political influence utilized their political connections with government officials to obtain RRF grants, despite the fact that the program was intended to assist restaurants struggling to stay open during the COVID-19 pandemic and, therefore, the restaurants and other businesses which needed RRF funds the most were excluded due to their lack of political influence.

86.     The foregoing is clearly inconsistent with the democratic principles upon which our republic was founded.

WHEREFORE, Plaintiffs respectfully request the following relief:

(a)     Declaring under the First Cause of Action that the SBA's use of race-based, gender-based and politically influenced preferences in considering RRF applications violated the Equal Protection Clause and thereby violated the constitutional rights of the Plaintiffs;

(b)     Declaring under the First Cause of Action that the RRF applications of the (Nonpriority) Plaintiffs must be considered by the SBA as of the dates they were received by the SBA, without reference to the aforesaid unconstitutional preferences;

(c)     Declaring under the First Cause of Action that if the RRF applications of the aforesaid Plaintiffs are determined to be acceptable as of the dates they were received, the applications must be immediately granted and funded by the SBA;

(d)     Declaring under the Second Cause of Action that each of the Plaintiffs named herein had a property interest in the receipt of RRF grant funds protected under the Due Process Clause which attached when the Plaintiffs submitted applications for an RRF grant;

(e)     Declaring under the Second Cause of Action that, as parties entitled to receive grants under the RRF program, Plaintiffs had a constitutionally protected property interest in the receipt of said funds and that the Plaintiffs' rights were violated by the Defendants' failure to ensure that the Plaintiffs were not deprived of the funds based on the unconstitutional and discriminatory administration of the fund;

(f)     Declaring under the Second Cause of Action that Plaintiffs' rights relative to the receipt of RRF grant funds were violated by the Defendants' failure to ensure Plaintiffs' access to RRF grants while the amount originally appropriated for the RRF program was available and by the failure to obtain and maintain the necessary funds to pay RRF grants to the Plaintiffs;

(g)     Awarding Judgment against Defendants in favor of Plaintiffs under the Third Cause of Action in an amount to be determined, based upon eligibility of the individual Plaintiffs to grants had the fund not been administered in a discriminatory manner and been underfunded;

(h)   Declaring under the Fourth Cause of Action that by enacting legislation without sufficient appropriations to fund RRF grants to which the Plaintiffs were entitled under the law, the President and the Congress violated the Plaintiffs' property interest in the receipt of RRF monies protected by the Due Process Clause; and

(i)   Awarding Plaintiffs reasonable attorneys fees, costs and disbursements of this action and such other and further relief the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial of all issues so triable.

Dated:   August 11, 2022
Amherst, New York

HOGANWILLIG, PLLC.

By:

Corey J. Hogan, Esq.
*Attorneys for Plaintiffs*
2410 North Forest Rd., Ste. 301
Amherst, New York 14068
Telephone: (716) 636-7600