UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MC MANAGEMENT OF ROCHESTER LLC,
PANE VINO LLC, PHARAOHS GC INC.,
VENETO WESTSIDE LLC, MJM FITCH, INC.,
759 CANANDAIGUA, INC., GRAND CENTRAL
WINE BAR, LLC, WILLIAM JAMES
DEVELOPMENT CORP., RAPHAEL'S CORP.,
and WMK MANAGEMENT, INC.,

                    Plaintiffs,

      v.

JOSEPH R. BIDEN, *in his official capacity as
President of the United States*, KEVIN
MCARTHY, *in his official capacity as the
Speaker of the United States House of
Representatives*, CHARLES SCHUMER, *in his
official capacity as the United States Senate
Majority Leader*, HAKEEM JEFFRIES, *in his
official capacity as Minority Leader of the United
States House of Representatives*, MITCH
MCCONNELL, *in his official capacity as
Minority Leader of the United States Senate*,
ISABEL CASILLAS GUZMAN, *in her official
capacity as administrator of the United States
Small Business Administration*, and THE
UNITED STATES SMALL BUSINESS
ADMINISTRATION[1],

                    Defendants.

---

**DECISION AND ORDER**

6:22-CV-06337 EAW

---

[1]      After the commencement of this lawsuit, Kevin McCarthy became Speaker of the United States House of Representatives and Hakeem Jeffries became Minority Leader of the United States House of Representatives.  They are substituted as defendants pursuant to Federal Rule of Civil Procedure 25(d).

## <u>INTRODUCTION</u>

In early 2021, Congress passed and the President signed into law the American Rescue Plan Act, a $1.9 trillion dollar stimulus bill intended, among other things, to ameliorate the economic impacts of the COVID-19 pandemic. *See* Pub. L. No. 117-2, 135 Stat. 4 (2021). One facet of the American Rescue Plan Act was the Restaurant Revitalization Fund (the "RRF"), a $28.6 billion dollar grant program for restaurants and bars struggling to meet payroll and other expenses. *See* 15 U.S.C. § 9009c. The American Rescue Plan Act provided that the RRF would be implemented by the Small Business Administration (the "SBA") and required the SBA to prioritize applications from businesses owned by women, veterans, and socially and economically disadvantaged individuals for the first 21 days of the RRF's operation. *See id.*

Plaintiffs are businesses that applied for an RRF grant but did not receive an award. They assert four causes of action, contending that: the SBA's implementation of the 21-day priority period violated their Fifth Amendment right to equal protection; the SBA's implementation of the 21-day priority period violated their Fifth Amendment right to due process; defendant Isabel Casillas Guzman (the "Administrator"), the Administrator of the SBA, is liable in damages for the alleged violation of their constitutional rights; and the President and Congress violated their Fifth Amendment right to due process by enacting the American Rescue Plan Act without providing sufficient appropriations to fund grants to eligible entities through the RRF. (Dkt. 1).

Defendants have moved to dismiss the complaint in its entirety for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.  (Dkt. 8).  For the reasons set forth below, Defendants' motion is granted.

## BACKGROUND[2]

### I.   Factual Background

In March through May of 2020, during the onset of the COVID-19 pandemic, spending at restaurants "plummeted 29 percent compared with the same period in 2019." United States Dep't of Agriculture Economic Research Service, *COVID-19 Working Paper: The Impact of COVID-19 Pandemic on Food-Away-From-Home Spending*, at 4 (2022).  Restaurant spending remained at depressed levels throughout 2020 and into early 2021.  *Id*.  The average total dollars spent in full-service restaurants in February to April of 2021 "was 21.52 percent lower than the same period pre-pandemic[.]"  *Id*. "Approximately 90,000 restaurants have been forced to close their doors due to the COVID pandemic[.]"  (Dkt. 1 at ¶ 8).

The RRF was established "to provide funding to help restaurants and other eligible businesses keep their doors open."   U.S. Small Business Administration, *Restaurant*

---

[2]    The Court's factual recitation is based on the complaint, supplemented by information taken from public records and governmental reports of which the Court takes judicial notice.  *See Does 1-2 v. Hochul*, No. 21-CV-5067 AMD TAM, 2022 WL 4637843, at *1 n.1 (E.D.N.Y. Sept. 30, 2022) ("The factual recitation is based on the complaint, as well as official public records on which the plaintiffs rely and which are subject to judicial notice under Rule 201 of the Federal Rules of Evidence, including the Emergency Order, the challenged Rule—Section 2.61—and the legislative history.  In addition, I take judicial notice of reports and other information from the Centers for Disease Control and Prevention, and other reliable public health authorities.").

*Revitalization   Fund*,   https://www.sba.gov/funding-programs/loans/covid-19-relief-options/restaurant-revitalization-fund (last visited June 22, 2023).  Eligible entities could apply for funding "equal to their pandemic-related revenue loss up to $10 million per business and no more than $5 million per physical location."  *Id*.

By statute, the Administrator was required "[d]uring the initial 21 day period in which the Administrator award[ed] grants" from the RRF to "prioritize awarding grants to eligible entities that are small business concerns owned and controlled by women (as defined in section 632(n) of this title), small business concerns owned and controlled by veterans (as defined in section 632(q) of this title), or socially and economically disadvantaged small business concerns (as defined in section 637(a)(4)(A) of this title)." 15 U.S.C. § 9009c(c)(3)(A).  Upon the expiration of this initial 21-day priority period, the Administrator was required to "award grants to eligible entities in the order in which applications are received by the Administrator."  *Id*. § 9009c(c)(1).

The 21-day priority period began on May 3, 2021.  (Dkt. 1 at ¶ 4).  Plaintiffs did not qualify for priority consideration under the terms of the American Rescue Plan Act, and despite having timely applied for RRF grants, no grants were awarded to them.  (*Id*. at ¶¶ 37-47).  According to Plaintiffs, "[t]he demand for RRF grants far exceeded the $28.6 billion appropriated for the program; of the 372,000 applications submitted seeking $76 billion in grants, only 105,000 grants were approved before the RRF ran out of money." (*Id*. at ¶ 8).  Efforts to replenish the RRF with additional funds have been unsuccessful. (*Id*.).

II.     **Procedural Background**

Plaintiffs commenced the instant action on August 11, 2022.  (Dkt. 1).  Defendants

filed the pending motion to dismiss on November 28, 2022.  (Dkt. 8).  Plaintiffs filed their

response on February 2, 2022 (Dkt. 14), and Defendants filed their reply on February 16,

2023 (Dkt. 15).

## DISCUSSION

I.      **Defendants' Motion to Dismiss**

Defendants have moved for dismissal of Plaintiffs' claims for lack of subject matter

jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that: (1)

Plaintiffs lack standing to pursue injunctive or declaratory relief because they do not allege

an ongoing or imminent injury; (2) Plaintiffs' request for injunctive and declaratory relief

is moot because the priority period expired on its own terms; (3) the complaint fails to

identify an express waiver of sovereign immunity permitting Plaintiffs to obtain damages

from the Administrator; and (4) Plaintiffs' claim for declaratory relief against the President

and Congress is nonjusticiable.  (Dkt. 8-1).  Defendants alternatively seek dismissal

pursuant to Rule 12(b)(6), arguing that Plaintiffs have failed to a state any viable claim on

the merits.  (*Id.*).  For the reasons set forth below, the Court agrees that it lacks subject

matter jurisdiction over Plaintiffs' claims.

A.      **Legal Standard—Subject Matter Jurisdiction**

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack

of subject matter jurisdiction if the court lacks the statutory or constitutional power to

adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the

action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms, S.á.r.l*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quotation and citation omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "When considering a motion to dismiss for lack of subject matter jurisdiction . . ., a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). In addition, a court is not limited to the allegations in the complaint and can "refer to evidence outside the pleadings," *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002), but it "may not rely on conclusory or hearsay statements contained in . . . affidavits." *J.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004). "Indeed, a challenge to the jurisdictional elements of a plaintiff's claim allows the Court to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 289 F. Supp. 2d 392, 399 (S.D.N.Y. 2003) (quotation omitted), *aff'd*, 403 F.3d 76 (2d Cir. 2005). "Where, as here, the defendant moves for dismissal under Rule 12(b)(1), Fed. R. Civ. P., as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (quotation omitted).

**B.** **Standing—Declaratory Relief**

The primary relief that Plaintiffs seek in their complaint is declaratory.[3] Specifically, in their first, second, and fourth causes of action, Plaintiffs ask the Court for: (1) "a declaratory judgment and finding of fact that the SBA's race-based and gender-based preferences in considering RRF applications violated . . . Plaintiffs' constitutional rights and that Plaintiffs' RRF applications must be considered as of the dates they were received by the SBA, without reference to the aforesaid unconstitutional preferences"; (2) "further declaration that, if the RRF applications of . . . Plaintiffs are determined to be acceptable as of the dates they were received, the applications must be granted and funded by Defendants"; (3) "a declaratory judgment and finding of fact that Defendant SBA violated Plaintiffs' property rights in RRF grant funds protected by the Due Process Clause of the Constitution by (a) failing to ensure the Plaintiffs would have access to RRF grant funding when appropriated funds were available, (b) failing to obtain funding to provide the RRF grants to which the Plaintiffs were entitled after the funds originally appropriated were exhausted, and (c) making funding decisions on an unconstitutional basis"; (4) "further declaratory judgment that Plaintiffs are entitled to the RRF grants they applied for and that those grants must be funded by Defendants and paid to the Plaintiffs"; and (5) a declaration that "by enacting legislation without sufficient appropriations to fund RRF grants to which the Plaintiffs were entitled under the law, the President and Congress violated the

---

[3]      While Defendants' motion to dismiss refers to both declaratory and injunctive relief, the complaint speaks of declaratory relief and Plaintiffs state in their opposition that they are not seeking injunctive relief.  (Dkt. 14 at 21).

Plaintiffs' property interest in the receipt of RRF monies protected by the Due Process Clause[.]"   (Dkt. 1 at ¶¶ 54, 56, 65, 86).  Defendants contend that Plaintiffs lack standing to seek such relief, because they do not face an ongoing or imminent injury.  The Court agrees, for the reasons that follow.

"The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (citations omitted). "To satisfy the requirements of Article III standing, plaintiffs must demonstrate '(1) [an] injury-in-fact, which is a concrete and particularized harm to a legally protected interest; (2) causation in the form of a fairly traceable connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief.'" *Hu v. City of New York*, 927 F.3d 81, 89 (2d Cir. 2019) (alteration in original) (quoting *Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 257 (2d Cir. 2013)).  "These elements are not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Id*. (quotation and alteration omitted).

"[S]tanding is not dispensed in gross" and "a plaintiff must demonstrate standing for each claim [it] seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Ests., Inc*., 581 U.S. 433, 439 (2017) (quotations omitted). "A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy [standing's] injury requirement but must show a likelihood that he or she will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998); *see*

*also Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) ("To obtain *prospective* relief, such as a declaratory judgment or an injunction, a plaintiff must show, *inter alia*, 'a sufficient likelihood that he [or she] will again be wronged in a similar way." (emphasis and alteration in original and quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983))).

Plaintiffs' claims in this case are based entirely on past injury—namely, that their RRF applications were not granted, allegedly because they did not qualify for priority consideration and because funding ran out before all eligible non-priority applications could be granted. However, as Defendants correctly point out in their moving papers, the priority period expired, and funding for the RRF ran out, long before this lawsuit was commenced. *See* U.S. Small Business Administration, Press Release 21-55, *SBA Administrator Announces Closure of Restaurant Revitalization Fund Program* (July 2, 2021), available online at https://www.sba.gov/article/2021/jul/02/sba-administrator-announces-closure-restaurantrevitalization-fund-program (last visited June 26, 2023). Prior to the closure of the RRF, $18 billion in grants was awarded to "underserved populations," while the remaining funds were "awarded to eligible applicants not identified as part of an underserved group." *Id*.

In other litigation related to the RRF, SBA has confirmed that on May 27, 2021, after the statutory priority period expired, it began processing applications from non-priority applicants. Declaration of John A. Miller, *Vitolo v. Guzman*, No. 3:21-cv-176, Dkt. No. 41-1 (E.D. Tenn. Jun. 3, 2021). SBA has further confirmed in other litigation that "because the statutory priority period is over, SBA will not take priority status into account

when issuing new RRF awards."  Declaration of John A. Miller, *Reboot Macon LLC V. United States of America Small Bus. Admin.*, No, 5:21-cv-221, Dkt. 55-1 (M.D. Ga. Sept. 6, 2022); *see also* 15 U.S.C. § 9009c(c)(1) (requiring the Administrator to award grants in the order the applications were received after the expiration of the priority period).[4]  In other words, there is no plausible mechanism by which Plaintiffs could be subject to a future injury of the same type alleged in the complaint, even if additional RRF funds were to somehow become available.[5]  They accordingly lack standing to seek the declaratory relief that is the primary focus of their complaint.

Plaintiffs' arguments to the contrary are unpersuasive.  They rely heavily on the Sixth Circuit's decision in *Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021), and similar district court cases from May of 2021.  (*See* Dkt. 14 at 8, 20-21).  In *Vitolo*—where the plaintiff sought a preliminary injunction requiring the SBA to process his RRF application before the remaining priority applications—the Sixth Circuit found a "real and concrete injury" specifically because there was "a real risk that the funds will run out, unless the agency processes [the plaintiff's] application before" the remaining priority applications. *Id*. at 360.  In other words, at the time that *Vitolo* (and the unreported district court cases

---

[4]     As previously noted, the Court "may consider affidavits and other materials beyond the pleadings to resolve [a] jurisdictional issue[.]" *J.S. ex rel. N.S. v. Attica Cent. Sch*., 386 F.3d 107, 110 (2d Cir. 2004).  Plaintiffs have not objected to Defendants' reliance on these sworn declarations submitted by the SBA in other litigation related to the RRF, nor have they contested the accuracy of the information set forth therein.

[5]     As Plaintiffs acknowledge in their complaint, attempts to replenish the RRF have not been successful.  The absence of any non-speculative possibility that additional RRF funds will become available in the future underscores Plaintiffs' lack of potential future injury.

on which Plaintiffs rely) was decided, there were still RRF funds remaining and certain applications were still being given priority. The plaintiffs in those cases were thus subject to imminent injury, and had standing to seek injunctive relief.

The facts here are entirely different. The RRF has been depleted. In the unlikely event any future funds become available, SBA has confirmed that applications will be granted without reference to priority status. Plaintiffs do not seek an injunction compelling future action, but various declarations indicating that Defendants violated their rights in the past. These critical distinctions make the standing analysis in *Vitolo* (and other cases decided in May of 2021 and seeking injunctive relief) wholly inapplicable here.

Plaintiffs further contend that they have standing because they seek damages. (Dkt. 14 at 21-22). However, as explained above, "standing is not dispensed in gross," and it is Plaintiffs' obligation to demonstrate standing as to "each form of relief that is sought." *Town of Chester*, 581 U.S. at 439. Plaintiffs' claim for damages—which the Court discusses below—does not suffice to establish standing with respect to their claims for declaratory relief.

For these reasons, the Court finds that it lacks subject matter jurisdiction over Plaintiffs' first, second, and fourth causes of action, all of which seek declaratory relief.

### C.   Sovereign Immunity—Damages Claim Against the Administrator

The Court turns to Plaintiffs' only remaining cause of action—the third cause of action, which seeks damages against the Administrator. As an initial matter, the Court notes that Plaintiffs have sued the Administrator solely in her official capacity. (Dkt. 1 at ¶ 29). "Under the doctrine of sovereign immunity, an action for damages will not lie

against the United States absent consent.  Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived." *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).

Here, there is no waiver of sovereign immunity allowing Plaintiffs to seek damages against the Administrator in her official capacity.  In their complaint, Plaintiffs cite *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (Dkt. 1 at ¶ 72).  However, "[t]he only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities." *Higazy v. Templeton,* 505 F.3d 161, 169 (2d Cir. 2007).  *Bivens* does not authorize official capacity claims of the type asserted by Plaintiffs.

Implicitly acknowledging this fatal flaw in their third cause of action, Plaintiffs state in their opposition papers that "[t]he SBA Administrator should have been named in this action and served in her individual capacity.  But those are minor procedural defects which can be easily corrected and the Plaintiffs respectfully request leave to do so." (Dkt. 14 at 16).  The Court considers Plaintiffs' request for leave to amend the complaint to assert an individual capacity claim against the Administrator below.  However, this request does not change the fact that the Court lacks subject matter jurisdiction over the third cause of action as currently pled.

In sum, the Court finds that Plaintiffs lack standing with respect to their first, second, and fourth causes of action, and that sovereign immunity bars Plaintiffs' third cause of action as currently pled.  The Court accordingly need not and does not reach Defendants'

- 12 -

additional arguments that Plaintiffs' requests for declaratory relief are moot and that Plaintiff's fourth cause of action is otherwise nonjusticiable, nor Defendants' merits-based arguments.

## II.   <u>Plaintiffs' Request for Leave to Amend</u>

As set forth above, Plaintiffs have included in their opposition to Defendants' motion a request to amend their complaint to assert their third cause of action (seeking damages) against the Administrator in her individual capacity. This "is not a proper motion for leave to amend, and fails to comply with the Local Rules of Civil Procedure with respect to the process for seeking to amend a pleading." *Wi3, Inc. v. Actiontec Elecs., Inc*., 71 F. Supp. 3d 358, 363 (W.D.N.Y. 2014) (explaining that, among other things, this District's Local Rules require the party seeking to amend a pleading to "identify the proposed amendments through the use of a word processing red-line function or other similar markings" (quotations omitted)). The Court would accordingly be within its discretion to simply outright deny this "cursory or boilerplate request[] . . ., made solely in a memorandum in opposition to a motion to dismiss." *Malin v. XL Capital, Ltd*., 312 F. App'x 400, 402 (2d Cir. 2009).

Moreover, even considered on the merits, Plaintiffs' request for leave to amend must be denied. Leave to amend is properly denied where the proposed amendment is futile. *See Anderson News, L.L.C. v. Am. Media, Inc*., 680 F.3d 162, 185 (2d Cir. 2012). Here, Plaintiffs seek to assert a *Bivens* claim against the Administrator based on the manner in which the RRF was operated. However, no such claim is available, as is made clear by the

Supreme Court's decisions in *Ziglar v. Abbasi*, 582 U.S. 120 (2017), and *Egbert v. Boule*, __ U.S. __, 142 S. Ct. 1793 (2022).

While 42 U.S.C. § 1983 "entitles an injured person to money damages if a state official violates his or her constitutional rights," Congress has not "create[d] an analogous statute for federal officials.  Indeed, in the 100 years leading up to *Bivens,* Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government."  *Ziglar*, 582 U.S. at 130.  "In *Bivens*, the Court held that it had authority to create a cause of action under the Fourth Amendment against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations."  *Egbert*, 142 S. Ct. at 1802.  "Over the following decade, the Court twice again fashioned new causes of action under the Constitution—first, for a former congressional staffer's Fifth Amendment sex-discrimination claim, *see Davis v. Passman*, 442 U.S. 228 (1979); and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980)."  *Id*.

Since deciding *Carlson* in 1980, the Supreme Court has not implied an additional cause of action under the Constitution.  However, lower federal courts have continued to grapple with what circumstances justify the extension of the *Bivens* remedy.  In *Ziglar*, the Supreme Court provided guidance on that point, explaining that "expanding the *Bivens* remedy is now a disfavored judicial activity," and that the key question to be asked "is who should decide whether to provide for a damages remedy, Congress or the courts?"  582 U.S. at 135 (quotations omitted).  The *Ziglar* Court further explained that the *Bivens* remedy may not be extended into a new context if there are "special factors counselling

- 14 -

hesitation in the absence of affirmative action by Congress," *id*. at 136 (citation omitted), and that a context is new "[i]f the case is different in a meaningful way from previous *Bivens* cases" decided by the Supreme Court, *id*. at 139.  A context may be meaningfully different "because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider."  *Id*. at 139-40.  Ultimately, "if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy[,] the courts must refrain from creating [one]."  *Id*. at 137.

In *Egbert*, the Supreme Court reiterated that "[e]ven a single sound reason to defer to Congress is enough to require a court to refrain from creating . . . a [*Bivens*] remedy." *Egbert*, 142 S. Ct. at 1803 (quotation omitted).  "If there is a rational reason to think" that the answer to the question "who should decide whether to provide for a damages remedy, Congress or the Courts?" is Congress, "as it will be in most every case," then "no *Bivens* action may lie."  *Id*. (citation omitted).  The Supreme Court explained further that "if [it] were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution."  *Id*. at 1809.  As another judge in this Circuit has noted, "the *Egbert* Court made clear that, effectively, [the special factors inquiry] operates as a bar to a *Bivens* claim in all cases except, perhaps, those involving Fourth, Fifth and Eighth Amendment claims factually indistinguishable from *Bivens*, [*Davis*], or *Carlson*."  *Cohen*

*v. United States*, No. 21-CV-10774 (LJL), 2022 WL 16925984, at *6 (S.D.N.Y. Nov. 14, 2022); *see also Smith v. Garcia*, No. 21-CV-578 NGG RJR, 2022 WL 17852393, at *7 (E.D.N.Y. Dec. 22, 2022) (same).

Applying the standard set forth in *Ziglar* and *Egbert*, it is clear that there can be no *Bivens* remedy in the circumstances presented here.  The context is a novel one, unlike any in which the Supreme Court has previously implied a cause of action under the Constitution.  And, as "in most every case," *Egbert*, 142 S. Ct. at 1803, there is at least one rational reason to defer to Congress as to the availability of a damages remedy.  Indeed, there are multiple such reasons, including (but not limited to): the fact that Congress legislated extensively in the area of pandemic-related relief yet chose not to provide a damages remedy of the type sought by Plaintiffs; the fact that recognizing a *Bivens* claim in this context would entangle the federal judiciary in Congress's and the SBA's policy-related decisions regarding pandemic-related relief; and the fact that recognizing a *Bivens* claim in this context would engender extensive litigation and potentially open up SBA officials to billions of dollars in personal liability, thus diverting their attention entirely from their job-related functions.  These considerations all support the conclusion that it is Congress, and not this Court, that should determine whether a damages remedy is available under the circumstances presented in this case.

Accordingly, the Court finds that Plaintiffs' proposed amendment would be futile, because there is no viable damages claim against the Administrator under the factual circumstances presented here.  Plaintiffs' request for leave to amend is denied.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss (Dkt. 8) on the basis that it lacks subject matter jurisdiction, and dismisses the complaint in its entirety without prejudice. *See Katz v. Donna Karan Co.*, *L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017). The Court denies Plaintiffs' request for leave to amend as futile. The Clerk of Court is instructed to enter judgment in favor of Defendants and close the case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  June 27, 2023
Rochester, New York